IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JESSIE RIVERA,

                Plaintiff,                    OPINION AND ORDER

v.

                                                   13-cv-056-wmc

RAVI GUPTA and CESAR LOPEZ,

                Defendants.

---

Plaintiff Jessie Rivera, a federal prisoner, alleges that during his incarceration at FCI-Oxford, the defendants, Dr. Ravi Gupta and Cesar Lopez, acted with deliberate indifference in violation of his Eighth Amendment rights to ongoing pain and numbness he suffered because of a second degree burn to his leg. Before the court is defendants' motion for summary judgment. (Dkt. #25.) For reasons set forth below, the court finds that plaintiff has failed to put forth sufficient evidence on the subjective prong of his deliberate indifference claim -- in other words, a reasonable jury could not conclude that defendants' treatment of Rivera's burn was reckless. Accordingly, the court will grant defendants' motion for summary judgment and dismiss this case.

UNDISPUTED FACTS[1]

**A. The Parties**

Plaintiff Jessie Rivera was incarcerated at FCI-Oxford for all times relevant to the present complaint. During the same time frame, defendant Ravi Gupta, M.D., was the

---

[1] Unless otherwise noted, the following facts are material and undisputed under the court's procedure on summary judgment.

clinical director of FCI-Oxford's Health Services Unit ("HSU") and defendant Cesar Lopez was its administrator.

### B. Initial Injury and Early Treatment

On May 5, 2011, Rivera suffered a second degree burn while working at FCI-Oxford's food service department after he slipped and fell on the ground, and a pot of boiling water then spilled onto his foot. Plaintiff visited the Health Services Unit ("HSU") the same day and received initial treatment for his burn. An HSU clinician prescribed and administered pain medicine, as well as cleansed, debrided and dressed the burn area. The initial HSU clinician also imposed certain work and physical restrictions, including use of a wheelchair. All of these were lifted within a few weeks. The HSU treated Rivera's burn for two weeks following the incident.[2]

On May 19, 2011, HSU clinician Judy Spahn examined plaintiff, noted that his condition had improved and, according to defendants, instructed him to return for follow-up care as necessary. Plaintiff does not directly dispute this account, but contends that Spahn told him, "[the] pain and numbness was part of the healing, and that [Rivera] had to wait two months to see if [he] was still experiencing pain and numbness in order . . . to see a burn specialist." (Pl.'s Resp. to Defs.' PFOFs (dkt. #36) ¶ 9 (citing Rivera Decl. (dkt. #38) ¶ 3a).)

---

[2] Rivera was denied leave to proceed on an Eighth Amendment claim based on the initial treatment of his burn (12/18/13 Op. & Order (dkt. #7) 6-7), but the court begins with these facts as background.

In July, Rivera returned to HSU complaining of "pain and numbness" over the burn area.[3] (Pl.'s PFOFs (dkt. #37) ¶ 15 (citing Rivera Decl. (dkt. #38) ¶ 3b).) Spahn saw Rivera. According to defendants, she noted a normal pulse, mild scarring and no open sores or signs of infection. Rivera does not directly dispute this, but states that Spahn only "visually examined" him and did not do a "physical examination" of his leg, ankle or foot. (Pl.'s Resp. to Defs.' PFOFs (dkt. #36) ¶ 11 (citing Rivera Decl. (dkt. #38) ¶ 3a).) There is no dispute that Spahn again instructed Rivera to return if the condition worsened.

### C. Follow Up Treatment

Approximately seven months later, on February 7, 2012, Rivera returned to the HSU complaining of numbness over the burn area. HSU clinician Chris Russell examined Rivera at that time, finding that he had good sensation in his foot, no redness, swelling or signs of infection, and no signs of muscular atrophy. Rivera disputes this proposed fact, asserting that "HSU clinician Chris Russell did not examine Plaintiff." (Pl.'s Resp. to Defs.' PFOFs (dkt. #36) ¶ 14 (citing Rivera Decl. (dkt. #38) ¶ 3f).) The medical records, however, show that Russell conducted an examination. (Defs.' Reply to Defs.' PFOFs (dkt. #42) ¶ 14 (citing Gupta Decl., Ex. A (dkt. #27-1) 29).) Unless plaintiff is calling into account the veracity of the medical record, the court assumes that plaintiff is taking issue with the *thoroughness* of Russell's examination. Regardless, there seems no dispute that Rivera was told during this visit that his numbness may persist and

---

[3] There is a factual dispute over whether Rivera complained only of numbness, but the court resolves this dispute in favor of Rivera, as the non-moving party.

that if he wanted to see a specialist, he would need to make such a request to HSU's clinical director, Dr. Gupta.

On February 13, 2012, less than one week after this follow up appointment, defendant Gupta saw Rivera. Before the examination, Gupta avers that he reviewed Rivera's medical record. While Rivera purports to dispute this, asserting that "Gupta never typed Plaintiff's registration number into the computer" (Pl.'s Resp. to Defs.' PFOFs (dkt. #36) ¶ 17 (citing Rivera Decl. (dkt. #38) ¶ 3h)), it is not clear how this assertion contradicts Gupta's statement nor how Rivera would have knowledge sufficient to call into question Gupta's representation that he reviewed Rivera's medical record in advance. Regardless, it is undisputed that plaintiff complained to Dr. Gupta about "numbness and tingling" in the burn area. For purposes of summary judgment, the court will also assume that Rivera also complained of "pain," which defendants dispute. (Defs.' Resp. to Pl.'s PFOFs (dkt. #43) ¶ 37.))

The parties also dispute much of what happened during the course of the February 13 examination as well. Gupta states that he physically examined Rivera, including performing a neurovascular exam to assure that the numbness was not originating from a neurovascular deficit, and that this exam was normal. Plaintiff flatly disputes that Gupta examined him. According to defendants, Dr. Gupta then informed Rivera that no further treatment was necessary because numbness secondary to a burn is part of the normal healing process. While plaintiff does not directly dispute this, he offers a more detailed account of the exchange, stating that

> Defendant Gupta then immediately got upset with Plaintiff and told Plaintiff it doesn't matter if Plaintiff gets a burn

4

>specialist, that he wasn't and couldn't do anything for Plaintiff, that if Plaintiff wasn't in prison then this would not have happened in the first place. Defendant Gupta then said that the only one who could fix Plaintiff's problems was GOD.

(Pl.'s Resp. to Defs.' PFOFs (dkt. #36) ¶ 21 (citing Rivera Decl. (dkt. #38) ¶ 3h).)

### D. Dr. Gupta's Decision Not to Refer to Specialist

Following this outburst, which the court must accept occurred as plaintiff avers for purposes of defendants' summary judgment motion, plaintiff never returned to HSU for treatment for his burn area. Instead, he was transferred from FCI-Oxford to other Bureau of Prison correctional institutions. A review of Rivera's medical record through May 9, 2015, does not reveal any treatment for his numbness symptoms, although there is an October 29, 2014, intake screening from another BOP institution, which notes Rivera's burn injury and states that he "still has numbness over area." (Rivera Decl., Ex. C (dkt. #38-3) 16.) Given this history, Dr. Gupta avers that he did not believe it was necessary to refer plaintiff to a specialist based on BOP guidelines governing the rendering of care for inmates.

The BOP guidelines place treatment options into five categories. With reference to these categories, Gupta determined that a specialist referral for Rivera fell within the "limited medical value of the medically acceptable -- not always necessary -- category." (Def.'s PFOFs (dkt. #31) ¶ 28 (citing Gupta Decl. (dkt. #27) ¶ 9).) Specifically, Gupta represents that he placed Rivera in this category believing his symptoms were part of the normal healing process and that a referral would not help.

### E. Lopez's Involvement

There is no dispute that Lopez, as administrator of the HSU, was not in a position to provide, and indeed never did provide care to Rivera. While the parties do dispute whether Lopez was involved in decisions relating to Rivera's medical care, there is also no dispute that at some unknown time between August 2011 and January 2012, Rivera (1) spoke with Lopez during "mainline" at lunch, (2) informed him of his ailments and HSU's treatment, and (3) requested help. Lopez told Rivera he would look into it and get back to him.

There is also no dispute that on February 2, 2012, Rivera filed a tort claim against medical for personal injury, which complained of permanent numbness. Lopez was later contacted about this form.[4]

### F. Ongoing Restrictions Due to Numbness

Dr. Gupta represents that numbness is part of the normal healing process and does not mandate treatment. Plaintiff disputes this, averring generally that his "ailments mandate treatment." (Pl.'s Resp. to Defs.' PFOFs (dkt. #36) ¶ 33 (citing Rivera Decl. (dkt. #38) ¶ 6).) Defendants further contend that plaintiff did not have any limitations on his activities of daily living. Plaintiff disputes this as well, averring that he does have "limitations on activities of my daily living," without providing any examples or support. (Pl.'s Resp. to Defs.' PFOFs (dkt. #36) ¶ 34 (citing Rivera Decl. (dkt. #38) ¶ 6).)

---

[4] This form resulted in Rivera being seen by HSU clinician Chris Russell on February 7, 2012. Plaintiff subsequently filed several forms with the warden complaining of medical treatment, some of which Lopez reviewed. (Pl.'s PFOFs (dkt. #37) ¶¶ 50-58.)

6

OPINION

To survive summary judgment on his claim that defendants were deliberately indifferent to a serious medical need, Rivera was required to proffer sufficient evidence from which a reasonable jury could find that: (1) he had an objectively serious medical need; and (2) defendants was deliberately indifferent to it. *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008). Defendants seek summary judgment on Rivera's Eighth Amendment deliberate indifference claim on the basis that plaintiff has failed to put forth sufficient evidence to support a jury finding that: (1) he suffered from an objectively serious medical condition; and (2) that defendants knew of and disregarded an excessive risk to Rivera's health. Alternatively, defendants contend that they are entitled to qualified immunity because it was not clearly established that: (1) defendant Gupta's failure to refer Rivera to a specialist was not "blatantly inappropriate," *Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014); and (2) defendant Lopez *could* be liable for relying on those charged with providing medical care. Because the court finds that plaintiff has failed to put forth sufficient evidence from which a reasonable jury could find that defendants were deliberately indifferent to his complaints of numbness and pain,[5] the court will grant defendants' motion and dismiss this case.

In *Gayton v. McCoy*, 593 F.3d 610 (7th Cir. 2010), the Seventh Circuit succinctly described the proof required to establish "deliberate indifference":

> [T]he plaintiff must show that the official acted with requisite culpable state of mind. This inquiry has two components. The official must have subjective knowledge of the risk to the

---

[5] As mentioned already, this assumes, as the court must, that plaintiff did complain of ongoing pain and not just numbness,

> inmate's health, and the official also must disregard that risk. Evidence that the official acted negligently is insufficient to prove deliberate indifference. Rather, deliberate indifference is simply a synonym for intentional or reckless conduct, and that "reckless" describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred. Simply put, an official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Even if a defendant recognizes the substantial risk, he is free from liability if he responded reasonably to the risk, even if the harm ultimately was not averted.

*Id.* at 620 (internal quotations and citations omitted).

In his complaint, Rivera alleged that he "constantly and repeatedly" requested medical care to address the pain and numbness in his leg, which allegedly has persisted even after his original burn had healed. (Am. Compl. (dkt. #6) 5.) The undisputed record, however, demonstrates that at each point Rivera sought medical treatment for his leg, that request was met timely. For example, after the initial two-week period post-injury, Rivera saw Spahn in May 2011 and saw her again two months later (as she suggested) in July 2011.

Rivera then waited over seven months to seek additional treatment, but once he submitted a request in early February 2012, he was immediately seen by Russell. Less than one week after that appointment, Rivera saw defendant Gupta. While Rivera may have been dissatisfied with his medical encounters, perhaps hoping that treatment providers could fully heal his burn, there is *no* evidence that the defendants and other medical practitioners ignored his complaints of numbness and pain. Instead, the record reflects that defendants and other medical care providers repeatedly explained that the

symptoms that plaintiff was experiencing are part of the normal healing process for a second degree burn.

Instead, Rivera's complaint is premised on allegedly, inappropriate treatment, rather than a failure to provide treatment at all. Specifically, Rivera complains of defendants' refusal to refer him to a burn specialist. However, "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (alteration in original) (quoting *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008)). Thus, "[a] medical professional acting in his professional capacity may be held to have displayed deliberate indifference only if the decision by the professional is such that a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* (quoting *Sain*, 512 F.3d at 894-95). Specifically, in the context of a refusal to refer a prisoner plaintiff to a specialist, the decision "supports a claim of deliberate indifference only if that choice is 'blatantly inappropriate.'" *Pyles*, 771 F.3d at 411 (quoting *Roe*, 631 F.3d at 858).

Here, the undisputed record reflects that the decision to deny plaintiff a referral to a burn specialist was based on Dr. Gupta's medical judgment, as informed by BOP policies. The court finds no basis to conclude that "the need for specialized expertise either was known by the treating physicians or would have been obvious to a lay person." *Pyles*, 771 F.3d at 412 (affirming district court's grant of summary judgment to doctor for refusing to refer plaintiff prisoner to specialist for treatment of back pain); *see also*

*Plummer v. Wexford Health Sources, Inc.*, 609 F. App'x 861, 863 (7th Cir. 2015) (affirming grant of summary judgment, finding delay in referring plaintiff to pulmonologist did not constitute deliberate indifference); *Davis v. Wahl*, 596 F. App'x 488, 490 (7th Cir. 2015) (finding prison doctor's delay in referring plaintiff to specialist did not constitute deliberate indifference). The court finds no basis from which a reasonable jury could find that this decision was reckless, "blatantly inappropriate," or otherwise constitutes a substantial departure from accepted medical standards.

At bottom, Rivera's complaint simply involves a difference of opinion with Dr. Gupta and perhaps Lopez (to the extent he had the authority to refer Rivera to a specialist). "[M]ere differences of opinion among medical personnel regarding a patient's appropriate treatment do not give rise to deliberate indifference." *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996); *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (noting that "a mere disagreement with a doctor's medical judgment" does not amount to deliberate indifference); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) ("[W]hether one course of treatment is preferable to another [is] beyond the [Eighth] Amendment's purview.").[6]

Finally, the court would be remiss not to note that the court previously denied Rivera's motion for assistance in recruiting counsel and that Rivera recently renewed that request. Counsel could have assisted Rivera in responding to defendants' motion for

---

[6] Rivera focuses on his account of an odd exchange with Dr. Gupta on February 13, 2012. Even assuming that Dr. Gupta responded as Rivera represents, however, this does not alter the court's conclusion that no reasonable jury could find Gupta acted recklessly in refusing to refer Rivera to a burn specialist, at least on this record.

summary judgment in several respects, perhaps most critically in possibly securing expert testimony in response to Rivera's claim.  In considering the undisputed record, however, the court concludes that expert testimony (assuming, it could be located) would not alter the court's determination that defendants' decision to refuse his request for a referral to a specialist was not so outrageous that a reasonable jury could find it blatantly inappropriate.

ORDER

IT IS ORDERED that:

1) defendants Ravi Gupta and Cesar Lopez's motion for summary judgment (dkt. #25) is GRANTED;

2) plaintiff Jessie Rivera's motion for reconsideration of appointment of counsel (dkt. #47) is DENIED as moot; and

3) the clerk of court is directed to enter judgment in defendants' favor and close this case.

Entered this 7th day of October, 2015.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge